**E-FILED**
Tuesday, 27 September, 2016  05:09:24 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| ALEJANDRA AGUERO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | No.: 2016-cv-2298 |
| | ) | |
| UNIVERSITY OF ILLINOIS, and | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| | ) | **JURY TRIAL** |
| **Defendant(s).** | ) | **DEMANDED** |

<u>COMPLAINT AT LAW</u>

Now comes, Plaintiff, Alejandra Agüero, by and through her attorney of record, Ronald S. Langacker, and for her Complaint at Law, states as follows:

### I.      NATURE OF THE ACTION

1. This action is brought to remedy unlawful discrimination practices on the basis of Race and Gender under 42 U.S.C. 1983 ("Section 1983"); 42 U.S.C. 1981 of the Civil Rights Act of 1866 ("Section 1981"); Retaliation under Section 1981; State Officials and Employees Ethics Act (5 ILCS 430/15-5 et seq.); and Illinois Whistleblower Act, 740 ILCS 174/1 et seq. to redress violations of the Illinois state employee whistleblower statute protecting state employees from retaliation after they have reported violations of law or regulations. Plaintiff seeks injunctive relief including, but not limited to: back pay and reinstatement to her prior position, other make whole relief, compensatory damages against all defendants, and punitive damages against the Defendants.

## II.      JURISDICTION AND VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C.  §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). Supplemental jurisdiction is conferred by 28 U.S.C. § 1367 for Plaintiff's state law causes of action.

3.  Venue is proper in the Urbana Division of the Central District of Illinois because the employment practices hereafter alleged to be unlawful were committed within this judicial district.

## III.     PARTIES

4.  Plaintiff Alejandra Agüero ("Ms. Agüero") is a Permanent Resident of the United States who, at the time of the events in question, resides in Champaign County, Illinois. Ms. Agüero is in a protected class, as she is female (gender), of Hispanic/Latino heritage (race), and from Mexico (national origin).

5.  During all relevant times, Defendants, Board of Trustees of the University of Illinois, and The University of Illinois, (collectively referred to as "The University"), constitutes a corporation whose missions include teaching, research, and public service in many academic disciplines. The University is a covered entity within the meaning of the Civil Rights Act of 1866.

## IV.     STATEMENT OF FACTS

6.  Plaintiff, Ms. Alejandra Agüero, began her employment with the University of Illinois ("University") at the Office of Admissions and Records in 2001. Ms. Agüero was promoted by the Office of Admissions and Records and the College of Business to assist the Graduate and Professional Admissions office at the Office of Admissions or Records

2

with Business files in 2003. Ms. Agüero then physically transferred to the College of

Business in 2005 where she received several more promotions from the period of 2005-

2008.

7. Ms. Agüero received outstanding performance evaluations from her supervisors from

2001 through 2008. In 2003, Ms. Agüero received many accolades and praise from other

staff members and from her supervisor, Sandy Frank. During this time, the University

also paid for Ms. Agüero to pursue a Master's Degree in the area of admissions. Before

Ms. Frank's retirement in 2008, Ms. Frank had initiated substantial bureaucratic process

to have Ms. Agüero promoted to Assistant Director of the College of Business.

8. In 2008, Susan Elliott officially replaced Sandy Frank as the Associate Dean of

Administration in the College of Business. Initially, Ms. Elliott was also satisfied with

Ms. Agüero's work performance.

9. On April 13, 2009, Ms. Agüero attended a meeting to discuss a decision she had made to

deny admission to an MSF applicant as the application appeared to be fraudulent. During

the meeting, Susan Elliott, Shelley Campbell (Executive Director of Administration

Finance Department), and Lorena Nicholas (Sr. Associate Director MSF Program), all

demanded that Ms. Agüero make a recommendation to admit the applicant because the

Finance Department had already sent the applicant an admission letter and the applicant

had already paid a deposit, which the Finance Department did not want to return. Ms.

Agüero's relationship with Ms. Elliott deteriorated after that point in time, as Ms. Agüero

refused to engage in the unethical behavior.

10. Shortly after the meeting regarding admissions, the Chicago Tribune reported on the

"Admissions/Clout Scandal" at the University of Illinois regarding alleged preferential

3

admissions practices within the MBA program. In the summer of 2009, the Illinois Governor's Admissions Review Commission questioned Dean DeBrock and Ms. Wilson about the Business College's admission practices. Ms. Wilson's testimony relied on a credential evaluation written by Ms. Agüero prior to when the scandal broke.

11. Following her Commission testimony, Ms. Wilson was vilified internally by the senior administration, as was Ms. Agüero. As a result of Ms. Agüero's credential evaluation which Ms. Wilson's used to deny admission to the applicant affiliated with a Member of the Board of Trustees, Ms. Elliott began a course of conduct to retaliate against Ms. Agüero.

12. On July 19, 2013, both Ms. Agüero and Ms. Elliott were involved with the hiring committee for the Assistant/Associate Director for International Programs in the College.

13. During the meeting, Ms. Elliott, in explaining the considerations for the position which the committee was to follow, stated that no minorities were to be considered for the particular position because it was "inappropriate to hire them for a position that made decisions, as minorities could only be hired for processing jobs." Ms. Elliott then explained that one does not need to think very hard for a processing job; hence, minorities could only be hired for these positions. Ms. Elliott went on to comment that public speaking jobs and anything related to travel were also inappropriate jobs for minorities.

14. Ms. Elliott also provided the committee with specific instructions to screen minorities for weaknesses. Ms. Elliott stated that, "when calling references of underrepresented applicants, always ask for their weaknesses. If the references have nothing negative to

say, always stay quiet for five – ten seconds and they'll come up with something. It

always works."

15. Search committee members agreed to approach Ms. Rebecca Lynn Goben, Diversity

Officer at the College of Business, to request that the search deadline be extended

because there were not enough underrepresented minorities in the applicant pool. Ms.

Goben, however, advised the committee chair that it was not necessary to extend the

application deadline as the end result would still be the same since minorities do not have

any international experience. The search deadline was not extended.

16. In the latter half of 2013 and 2014, the discriminatory and retaliatory conduct against Ms.

Agüero escalated to include the following:

   a. Ms. Agüero was accused of providing unauthorized assistance to a College of

   Business faculty during the University's reduced service days in December of

   2013, though the assistance request had in fact been approved by Ms. Elliott prior

   to Ms. Agüero accepting the invitation;

   b. Ms. Agüero was wrongfully held accountable for errors with admissions files

   during her absence in December of 2013, even though none of the department

   contacts were admitting due to the College of Business and the Graduate College

   being closed;

   c. Ms. Agüero was wrongfully accused of delaying the review of admissions files

   and the Graduate College's delay in admitting during the Spring of 2014, even

   though Ms. Agüero was on medical leave in February of 2014 as the result of a

   workplace injury; and

5

d.  Ms. Agüero was wrongfully accused by of taking up an unauthorized assistantship even though Ms. Agüero had never taken an assistantship with the University. Ms. Elliott also wrongfully accused Ms. Agüero of allowing her academic pursuits to interfere with Ms. Agüero's full-time job duties at the College. The accusation was without merit because Ms. Agüero was in fact taking courses on nights and weekends in order to prevent interference with her employment.

17. Ms. Agüero's position was eliminated when the admissions process at the College became decentralized in 2014. Ms. Agüero was temporarily reassigned to the Alumni Affairs Office.

18. While temporarily at the Alumni Affairs Office in the summer of 2014, Ms. Agüero was sexually harassed by Dr. Joseph Mahoney, a senior faculty member. Dr. Mahoney made multiple sexual advances to Ms. Agüero, stating that he could "help her with her career" if Ms. Agüero slept with him. Ms. Agüero repeatedly refused his advances. At one point, Dr. Mahoney came into Ms. Agüero's office, closed the door, stated he did not like "rejection," and asked her for a hug. Dr. Mahoney stated he did not want to scare Ms. Agüero, but that he desperately needed to be hugged.

19. Ms. Agüero adamantly refused Dr. Mahoney's advances, and on October 3, 2014, anonymously reported the incidents to Office of Diversity, Equity and Access ("ODEA"). When Ms. Agüero contacted ODEA to inquire about the complaint, she was told that since Ms. Agüero had requested to remain anonymous, the ODEA could not disclose the findings of their investigation.

20. On October 1, 2014, Ms. Agüero was transferred to the Center for Professional Responsibility in Business and Society ("CPRBS"), in order to serve as Assistant

Director. This was a permanent assignment, and Ms. Agüero was to be supervised by

Gretchen Winter and Dr. Mark Peecher.

21. After being transferred to CPRBS, Ms. Agüero once again met and exceeded her

employer's expectations within the position, including but not limited to the following:

received praise from Ms. Winter in December 2014 for planning and executing the

Hallene Lecture the previous month; was complimented by Ms. Winter for rapidly

learning how to process purchase orders for all Center accounts in February 2015; and

was publicly praised by Ms. Winter at an event for planning and executing the April 2015

Leighton Lecture.

22. As part of her employment duties, Ms. Agüero processed Ms. Winter's reimbursements

from many accounts, including the Conference Board Account.

23. During that summer, Ms. Agüero was asked by Ms. Winter and Dr. Peecher to create a

report consisting of all the "gift accounts by donor name and donation amounts" in

preparation for a future meeting the Center's Advisory Board member, Mike Zychinski.

24. In assembling the report, an issue arose as to whether the Conference Board Account was

considered a "gift fund" and whether it should be included in the report. Ms. Winter

considered the Conference Board Account to be a gift account, as she was gifting the

Center all the money she had personally been offered for her services during her public

engagement duties with private companies.

25. On September 4, 2015, Ms. Agüero received an email from College Business Office staff

who requested a meeting with Ms. Winter to discuss the Conference Board Account. Ms.

Agüero was advised that she should also attend the meeting.

26. During the September 4, 2015 meeting, Ms. Winter was asked whether the inflows into

the Conference Board Account were paid fees for her services. Ms. Winter stated that

these fees were a part of her job responsibilities, referring to the responsibilities as

"public engagement." Ms. Winter stated during the meeting that she performed

approximately 8-10 such engagements each year, at approximately $3,000.00 each. When

asked if she had proof of the signed contracts, Ms. Winter stated that the negotiations

were informal.

27. On September 14, 2015, Ms. Agüero submitted an ethics inquiry by email to the

University Ethics and Compliance Department regarding her concerns with Ms. Winter's

management of the Conference Board Account. Ms. Agüero requested that this

information remain confidential, as she was specifically concerned about retaliation

within the Department.

28. On September 16, 2015, Donna McNealy, Executive Director of the Office of Ethics and

Compliance, responded by email to Ms. Agüero's inquiry, stating that she would

investigate the use of the Conference Board Account.

29. Eight days later, on September 24, 2015, Ms. Winter and Dr. Peecher conducted a

performance review of Ms. Agüero. The review found that Ms. Agüero's performance

was "Not Acceptable" or "Needs Improvement/Not Acceptable" in all possible categories

and openly questioned Ms. Agüero's judgment and knowledge of her position. Ms.

Agüero was given three months to improve her performance.

30. On September 25, 2015, Ms. Agüero contacted Ms. McNealy of the Office of Ethics and

Compliance and stated that she was being harassed as a result of her September 14

inquiry. Ms. McNealy responded the following day, affirming she had been in contact

with the College regarding the ethics complaint several days prior to the September 24

meeting. Ms. McNealy advised Ms. Agüero that if she felt she was being harassed, she

should contact the ODEA.

31. On October 12, 2015, Ms. Agüero filed a complaint with ODEA, alleging that she was

being discriminated against based upon her gender, race, and national origin.

32. On December 22, 2015, Ms. Winter and Dr. Peecher conducted a second performance

evaluation of Ms. Agüero, again finding that Ms. Agüero's performance was "Not

Acceptable" in every measurable category.

33. On December 22, Ms. Agüero again contacted the ODEA and stated that she felt she was

being retaliated against for filing the October 12, 2015 ODEA complaint.

34. On April 7, 2016, Ms. Agüero was notified that due to her alleged poor performance, the

University would be terminating her contract.

35. The Defendants failed to ever investigate or adequately respond to Agüero's complaints,

objections, or concerns with regards to the October 3, 2014 complaint of sexual

harassment, the September 14, 2015 report of an ethics violation, or the October 12, 2015

complaint filed within ODEA.

36. The Defendants' conduct constitutes a pattern of discrimination based on race and

national origin, as well as a pattern of retaliation for complaints of gender, race and

national origin discrimination. Defendants' conduct also constitutes a pattern of

retaliation against employees who disclose or threaten to disclose activity that employees

reasonably believe is in violation of a law, rule, or regulation.

## COUNT I
## (RACE DISCRIMINATION - 42 U.S.C 1981 AND 1983 (Section 1981))

37. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth

    herein.

38. By engaging in the conduct described in the preceding paragraphs, including but not

    limited to terminating Plaintiff's contract with the University because of her race, and

    doing so in a manner substantially more aggressive, onerous, and injurious than for

    Caucasian employees charged with far more serious misconduct, the Defendants named

    above unlawfully discriminated against Plaintiff in violation of the Equal Protection

    Clause of the 14th Amendment to the U.S. Constitution and 42 U.S.C. §§ 1981 and 1983.

39. Said Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial

    damages, including but not limited to: loss of employment, loss of past and future income

    and benefits, loss of earning capacity, emotional distress, loss of reputation, and

    humiliation and embarrassment. Plaintiff will continue to suffer these damages in the

    future.

40. Said Defendants' unlawful conduct, as alleged above, was intentional and undertaken

    with malice and reckless indifference to Plaintiff's rights under the Equal Protection

    Clause and 42 U.S.C. §§ 1981 and 1983, and Plaintiff therefore seeks awards of punitive

    damages against these defendants in order to deter them and others similarly situated

    from such wrongful conduct in the future.

## COUNT II
## (RETALIATION UNDER SECTION 1981)

41. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth

    herein.

42. As set forth in the preceding paragraphs, the Plaintiff engaged in activity protected from
retaliation under § 1981, including but not limited to: repeatedly, both orally and in
writing, reporting and opposing unlawful racial discrimination against her and unlawful
retaliation for doing so to University officials, and complaining of such discrimination
and retaliation in her Complaint to OEDA in October 12, 2015.

43. By engaging in the conduct described in the preceding paragraphs, including but not
limited to terminating Plaintiff in the manner set forth above due to Plaintiff having
engaged in protected activity, Defendants unlawfully retaliated against Plaintiff in
violation of 42 U.S.C. §§ 1981.

44. Said Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial
damages, including but not limited to loss of employment, loss of past and future income
and benefits, loss of earning capacity, emotional distress, loss of reputation, and
humiliation and embarrassment. Plaintiff will continue to suffer these damages in the
future.

45. Said Defendants' unlawful conduct, as alleged above, was intentional and undertaken
with malice and reckless indifference to Plaintiff's rights under 42 U.S.C.§§ 1981, and
Plaintiff therefore seeks awards of punitive damages in order to deter Defendants and
others similarly situated from such wrongful conduct in the future.

**COUNT III**
**(VIOLATION OF ILLINOIS STATE OFFICIALS**
**AND EMPLOYEES ETHICS ACT, 5 ILCS 430/15-5 *et seq.*)**

46. Plaintiff repeats and re-alleges all of the paragraphs in this complaint as if fully set forth
herein.

11

47. The State Officials and Employees Ethics Act, 5 ILCS 430/15-1, prohibits retaliatory action by a State agency or employee against a State employee because he or she 1) disclosed or threatened to disclose to a supervisor or to a public body an activity, policy or practice of any State agency or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation; or 2) provides information to any public body conducting an investigation, hearing or inquiry into any violation of law, rule or regulation by any State agency or State employee.

48. Defendants, University of Illinois and the Board of Trustees of the University of Illinois, are State agencies within the meaning of 5 ILCS 430/15-5.

49. Pursuant to 5 ILCS 430/15-5 through 15-20, the actions against Plaintiff by the University were adverse employment actions in retaliation for Plaintiff's protected activity as described herein. Plaintiff reasonably believed the activities, policies and practices at the University violated the laws, rules and regulations. Plaintiff's protected activity was at a minimum a contributing factor that caused such adverse actions to be taken against her.

50. Pursuant to 5 ILCS 430/15-25, Plaintiff is entitled to all remedies necessary to make her whole and prevent future violations of the Act, including, but not limited to: reinstatement to her previous position within the University, as well as reinstatement of full benefits and seniority rights, and reasonable attorneys' fees. In order to make her whole, Plaintiff also seeks an award of compensatory damages for the severe emotional distress and humiliation she has had to incur.

51. To prevent future violations of the Act, Plaintiff seeks an award of punitive damages against the Defendants.

## COUNT IV
## (ILLINOIS WHISTLEBLOWER ACT, 740 ILCS 174/1 *et seq.*)

52. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

53. As set forth in the preceding paragraphs, Plaintiff engaged in activities for which government employees are protected from retaliation by the Whistleblower Act, including but not limited to disclosing the possible financial mismanagement of CPRBS funds that Plaintiff had reasonable cause to believe disclosed violations of Illinois law, rules, and regulations to government or law enforcement agencies.

54. By engaging in the adverse conduct described in the preceding paragraphs, including but not limited giving the Plaintiff several negative evaluations, marginalizing the Plaintiff and ultimately deciding to terminate Plaintiff's contract, Defendants engaged in a pattern of retaliation against Plaintiff in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq.

55. Said Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

56. Defendants' unlawful conduct was intentional and undertaken with malice and reckless indifference to Plaintiff's rights under the Whistleblower Act, and Plaintiff therefore seeks awards of punitive damages against these defendants in order to deter them and others similarly situated individuals from such wrongful conduct in the future.

## V.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Enter a declaratory judgment that Defendants have violated Plaintiff s rights under the Fourteenth Amendment to the United States Constitution;

B. Enter a declaratory judgment that Defendants have unlawfully retaliated against Plaintiff in violation of the State Officials and Employees Ethics Act, 5 ILCS 430/15-10, and the Illinois Whistleblower Act, 740 ILCS 174/1 et seq.;

C. Order that the Defendant reinstate Plaintiff, Ms. Alejandra Agüero, to her position as an Assistant Director to the Center of Professional Responsibility in Business and Society;

D. Grant Plaintiff a judgment for compensatory damages as to each count in an amount sufficient to fully compensate her, and grant Plaintiff a judgment against the Defendants for punitive damages;

E. Permanently enjoin Defendants from retaliating against whistleblowers and those who complain of discrimination by appointing a court monitor to prevent such wrongdoing;

F. Grant Plaintiff reasonable attorneys' fees, costs, and fees for experts; and

G. Grant Plaintiff such other relief as this Court deems necessary and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

> ALEJANDRA AGUERO,
> PLAINTIFF
>
> By: /s/Ronald S. Langacker
> Ronald S. Langacker
> Attorney for Plaintiff

14

Ronald S. Langacker, #6239469
Langacker Law, Ltd.
102 East Main Street, Suite 100
Urbana, Illinois 61801
(217) 954-1025
(217) 903-5255
ron@langackerlaw.com