UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ALEJANDRA AGÜERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   No.: 2016-cv-2298 |
| | ) |
| UNIVERSITY OF ILLINOIS, and | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | )   **JURY TRIAL** |
| Defendant(s). | )   **DEMANDED** |

## AMENDED COMPLAINT AT LAW

Now comes, Plaintiff, Alejandra Agüero, by and through her attorney of record, Ronald S. Langacker, and for her Amended Complaint at Law, states as follows:

### NATURE OF THE ACTION

1. This action is brought to remedy unlawful discrimination practices on the basis of Race, National Origin, and Gender under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; State Officials and Employees Ethics Act (5 ILCS 430/15-5 *et seq.*); and the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*. Plaintiff seeks injunctive relief including, but not limited to: back pay and reinstatement to her prior position, other make-whole relief, compensatory damages against all Defendants, and punitive damages against the Defendants.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). Supplemental jurisdiction is conferred by 28 U.S.C. § 1367 for Plaintiff's state law causes of action.

1

3. Venue is proper in the Urbana Division of the Central District of Illinois because the employment practices hereafter alleged to be unlawful were committed within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff has exhausted all of her administrative remedies prior to bringing this lawsuit.

5. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter from the EEOC on January 12, 2017, a true and correct copy of which is attached as Plaintiff's Exhibit A. The right to sue letter was issued as a result of the charge of discrimination filed by the Plaintiff and received by the EEOC on September 12, 2016, a true and correct copy of which is attached as Plaintiff's Exhibit B. All allegations of said charges and exhibits are incorporated by reference hereto.

## PARTIES

6. Plaintiff, Alejandra Agüero ("Ms. Agüero"), is a Permanent Resident of the United States who, at the time of the events in question, resides in Champaign County, Illinois. Ms. Agüero is in a protected class, as she is female (gender), of Hispanic/Latino heritage (race), and from Mexico (national origin).

7. Plaintiff is an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

8. During all relevant times, Defendants, Board of Trustees of the University of Illinois and The University of Illinois, collectively referred to as "The University" or "University", constitutes a corporation whose missions include teaching, research, and public service in many academic disciplines. The University is a covered entity within the meaning of the

Civil Rights Act of 1866. The University is an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF FACTS

9. Plaintiff, Ms. Alejandra Agüero, began her employment with the University of Illinois ("University") at the Office of Admissions and Records in 2001. Ms. Agüero was promoted by the Office of Admissions and Records and the College of Business to assist the Graduate and Professional Admissions office at the Office of Admissions and Records with Business files in 2003. Ms. Agüero then physically transferred to the College of Business in 2005 where she received several more promotions from 2005 to 2008.

10. Ms. Agüero received outstanding performance evaluations from her supervisors from 2001 through 2008. In 2003, Ms. Agüero received many accolades and praise from other staff members and from her supervisor, Sandy Frank. During this time, the University also paid for Ms. Agüero to pursue a Master's Degree in the area of admissions. Before Ms. Frank's retirement in 2008, Ms. Frank had initiated substantial bureaucratic process to have Ms. Agüero promoted to Assistant Director of the College of Business.

11. In 2008, Susan Elliott officially replaced Sandy Frank as the Associate Dean of Administration in the College of Business. Initially, Ms. Elliott was also satisfied with Ms. Agüero's work performance.

12. On April 13, 2009, Ms. Agüero attended a meeting to discuss a decision she had made to deny admission to an MSF applicant as the application appeared to be fraudulent. During the meeting, Susan Elliott, Shelley Campbell (Executive Director of Administration

Finance Department), and Lorena Nicholas (Sr. Associate Director MSF Program), all demanded that Ms. Agüero make a recommendation to admit the applicant because the Finance Department had already sent the applicant an admissions letter and the applicant had already paid a deposit, which the Finance Department did not want to return. Ms. Agüero's relationship with Ms. Elliott deteriorated after that point in time, as Ms. Agüero refused to engage in the unethical behavior.

13. Shortly after the meeting regarding admissions, the Chicago Tribune reported on the "Admissions/Clout Scandal" at the University of Illinois regarding alleged preferential admissions practices within the MBA program. In the summer of 2009, the Illinois Governor's Admissions Review Commission questioned the Associate Dean of Professional Programs and Plaintiff's supervisor, Dean Larry DeBrock, and former Director of MBA Admissions Ms. Jackie Wilson about the Business College's admission practices. Ms. Wilson's testimony relied on a credential evaluation written by Ms. Agüero prior to when the scandal broke.

14. Following her Commission testimony, Ms. Wilson was vilified internally by the senior administration, as was Ms. Agüero. As a result of Ms. Agüero's credential evaluation which Ms. Wilson's used to deny admission to the applicant affiliated with a Member of the Board of Trustees, Ms. Elliott began a course of conduct to retaliate against Ms. Agüero.

15. On July 19, 2013, both Ms. Agüero and Ms. Elliott were involved with the hiring committee for the Assistant/Associate Director for International Programs in the College.

16. During the meeting, Ms. Elliott, in explaining the considerations for the position which the committee was to follow, stated that no minorities were to be considered for the

4

particular position because it was "inappropriate to hire them for a position that made decisions, as minorities could only be hired for processing jobs." Ms. Elliott then explained that one does not need to think very hard for a processing job; hence, minorities could only be hired for these positions. Ms. Elliott went on to comment that public speaking jobs and anything related to travel were also inappropriate jobs for minorities.

17. Ms. Elliott also provided the committee with specific instructions to screen minorities for weaknesses. Ms. Elliott stated that, "when calling references of underrepresented applicants, always ask for their weaknesses. If the references have nothing negative to say, always stay quiet for five to ten seconds and they'll come up with something. It always works."

18. Search committee members agreed to approach Ms. Rebecca Lynn Goben, Diversity Officer at the College of Business, to request that the search deadline be extended because there were not enough underrepresented minorities in the applicant pool. Ms. Goben, however, advised the committee chair that it was not necessary to extend the application deadline as the end result would still be the same since minorities do not have any international experience. The search deadline was not extended.

19. In the latter half of 2013 and 2014, the discriminatory and retaliatory conduct against Ms. Agüero escalated to include the following:

    a. Ms. Agüero was accused of providing unauthorized assistance to a College of Business faculty during the University's reduced service days in December of 2013, though the assistance request had in fact been approved by Ms. Elliott prior to Ms. Agüero accepting the invitation;

5

b. Ms. Agüero was wrongfully held accountable in her subsequent performance evaluations for errors with admissions files during her scheduled absence in December of 2013, even though none of the department contacts were admitting due to the College of Business and the Graduate College being closed;

c. Ms. Agüero was wrongfully accused of delaying the review of admissions files and the Graduate College's delay in admitting during the Spring of 2014, even though Ms. Agüero was on medical leave in February of 2014 as the result of a workplace injury; and

d. Ms. Agüero was wrongfully accused of taking up an unauthorized assistantship even though Ms. Agüero had never taken an assistantship with the University. Ms. Elliott also wrongfully accused Ms. Agüero of allowing her academic pursuits to interfere with Ms. Agüero's full-time job duties at the College. The accusation was without merit because Ms. Agüero was in fact taking courses on nights and weekends in order to prevent interference with her employment.

20. Ms. Agüero's position was eliminated when the admissions process at the College became decentralized in 2014. Ms. Agüero was temporarily reassigned to the Alumni Affairs Office.

21. While temporarily at the Alumni Affairs Office in the summer of 2014, Ms. Agüero was sexually harassed by Dr. Joseph Mahoney, a senior faculty member. Dr. Mahoney made multiple sexual advances to Ms. Agüero, stating that he could "help her with her career" if Ms. Agüero slept with him. Ms. Agüero repeatedly refused his advances. At one point, Dr. Mahoney came into Ms. Agüero's office, closed the door, stated he did not like

"rejection," and asked her for a hug. Dr. Mahoney stated he did not want to scare Ms. Agüero, but that he desperately needed to be hugged.

22. Ms. Agüero adamantly refused Dr. Mahoney's advances, and on October 3, 2014, anonymously reported the incidents to the Office of Diversity, Equity and Access ("ODEA"). When Ms. Agüero contacted the ODEA to inquire about the complaint, she was told that since Ms. Agüero had requested to remain anonymous, the ODEA could not disclose the findings of their investigation.

23. On October 1, 2014, Ms. Agüero was transferred to the Center for Professional Responsibility in Business and Society ("CPRBS"), in order to serve as Assistant Director. This was a permanent assignment, and Ms. Agüero was to be supervised by Gretchen Winter and Dr. Mark Peecher.

24. After being transferred to CPRBS, Ms. Agüero once again met and exceeded her employer's expectations within the position, including but not limited to the following: received praise from Ms. Winter in December 2014 for planning and executing the Hallene Lecture the previous month; was complimented by Ms. Winter for rapidly learning how to process purchase orders for all Center accounts in February 2015; and was publicly praised by Ms. Winter at an event for planning and executing the April 2015 Leighton Lecture.

25. As part of her employment duties, Ms. Agüero processed Ms. Winter's reimbursements from many accounts, including the Conference Board Account.

26. During that summer, Ms. Agüero was asked by Ms. Winter and Dr. Peecher to create a report consisting of all the "gift accounts by donor name and donation amounts" in preparation for a future meeting the Center's Advisory Board member, Mike Zychinski.

27. In assembling the report, an issue arose as to whether the Conference Board Account was considered a "gift fund" and whether it should be included in the report. Ms. Winter considered the Conference Board Account to be a gift account, as she was gifting the Center all the money she had personally been offered for her services during her public engagement duties with private companies.

28. On September 4, 2015, Ms. Agüero received an email from College Business Office staff who requested a meeting with Ms. Winter to discuss the Conference Board Account. Ms. Agüero was advised that she should also attend the meeting.

29. During the September 4, 2015 meeting, Ms. Winter was asked whether the inflows into the Conference Board Account were paid fees for her services. Ms. Winter stated that these fees were a part of her job responsibilities, referring to the responsibilities as "public engagement." Ms. Winter stated during the meeting that she performed approximately 8-10 such engagements each year, at approximately $3,000.00 each. When asked if she had proof of the signed contracts, Ms. Winter stated that the negotiations were informal.

30. On September 14, 2015, Ms. Agüero submitted an ethics inquiry by email to the University Ethics and Compliance Department regarding her concerns with Ms. Winter's management of the Conference Board Account. Ms. Agüero requested that this information remain confidential, as she was specifically concerned about retaliation within the Department.

31. On September 16, 2015, Donna McNealy, Executive Director of the Office of Ethics and Compliance, responded by email to Ms. Agüero's inquiry, stating that she would investigate the use of the Conference Board Account.

32. Eight days later, on September 24, 2015, Ms. Winter and Dr. Peecher conducted a performance review of Ms. Agüero. The review found that Ms. Agüero's performance was "Not Acceptable" or "Needs Improvement/Not Acceptable" in all possible categories and openly questioned Ms. Agüero's judgment and knowledge of her position. Ms. Agüero was given three months to improve her performance.

33. On September 25, 2015, Ms. Agüero contacted Ms. McNealy of the Office of Ethics and Compliance and stated that she was being harassed as a result of her September 14 inquiry. Ms. McNealy responded the following day, affirming she had been in contact with the College regarding the ethics complaint several days prior to the September 24 meeting. Ms. McNealy advised Ms. Agüero that if she felt she was being harassed, she should contact the ODEA.

34. On October 12, 2015, Ms. Agüero filed a complaint with ODEA, alleging that she was being discriminated against based upon her gender, race, and national origin.

35. On December 22, 2015, Ms. Winter and Dr. Peecher conducted a second performance evaluation of Ms. Agüero, again finding that Ms. Agüero's performance was "Not Acceptable" in every measurable category.

36. On December 22, Ms. Agüero again contacted the ODEA and stated that she felt she was being retaliated against for filing the October 12, 2015 ODEA complaint.

37. On April 7, 2016, Ms. Agüero was notified that due to her alleged poor performance, the University would be terminating her contract. The Plaintiff was further removed from the College of Business during the summer of 2016 and relocated to the University's College of Education for the remaining period of her employment.

38. The Defendants failed to ever investigate or adequately respond to Agüero's complaints, objections, or concerns with regards to the October 3, 2014 complaint of sexual harassment, the September 14, 2015 report of an ethics violation, or the October 12, 2015 complaint filed within ODEA.

39. The Defendants' conduct constitutes a pattern of discrimination based on race and national origin, as well as a pattern of retaliation for complaints of gender, race and national origin discrimination. Defendants' conduct also constitutes a pattern of retaliation against employees who disclose or threaten to disclose activity that employees reasonably believe is in violation of a law, rule, or regulation.

## COUNT I
### (Violation of Title VII - Race Discrimination)

40. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

41. The Plaintiff, Ms. Agüero, is a member of a protected class (Hispanic/Latino) as defined by 775 ILCS 5/1- 103(A) and Title VII (Civil Rights Act of 1964, Section 701 *et seq.*, 42 U.S.C.A. 2000e *et seq.*) ("Title VII").

42. Throughout her employment, Ms. Agüero performed her job duties in a satisfactory manner consistent with her employer's reasonable expectations.

43. As detailed above, and as a result of her race, the Plaintiff suffered numerous adverse

employment actions during her time with the University.

44. The University has discriminated against the Plaintiff by treating her differently from and less preferably than similarly-situated employees not within Plaintiff's protected class, and further by subjecting Plaintiff to discriminatory (lesser) pay and benefits, discriminatory terms and conditions of employment, and other forms of discrimination, in violation of Title VII.

45. Defendant's employees who engaged in the same conduct as Plaintiff, but were not in the same protected class as Plaintiff, were not subjected to the same race-based discrimination as the Plaintiff.

46. The discriminatory conduct described above was the result of a willful or intentional effort on the part the University to discriminate against the Plaintiff for reason of her race.

47. The University's unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

48. That as a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT II
### (Violation of Title VII - National Origin)

49. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

50. Ms. Agüero is a member of a protected class (national origin-Mexico) as defined by Title VII.

51. Throughout her employment, Ms. Agüero performed her job duties in a satisfactory manner consistent with her employer's reasonable expectations.

52. As detailed above, and as a result of her national origin, the Plaintiff suffered numerous adverse employment actions during her time with the Defendants.

53. Defendants have discriminated against the Plaintiff by treating her differently from and less preferably than similarly-situated employees not within Plaintiff's protected class, and further by subjecting Plaintiff to discriminatory (lesser) pay and benefits, discriminatory terms and conditions of employment, and other forms of discrimination, in violation of Title VII.

54. Defendants' employees who engaged in the same conduct as Plaintiff, but were not in the same protected class, were not subjected to the same discrimination due to their national origin as the Plaintiff.

55. The discriminatory misconduct described above was the result of a willful or intentional effort on the part of the University to discriminate against the Plaintiff for reason of her national origin.

56. The University's unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and

humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

57. That as a direct and proximate result of one or more of the above acts of intentional discrimination on the basis her national origin, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT III
### (Violation of Title VII - Gender Discrimination)

58. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

59. Ms. Agüero is a member of a protected class (Gender—Female) as defined by Title VII.

60. Throughout her employment, Ms. Agüero performed her job duties in a satisfactory manner consistent with the Employer's reasonable expectations.

61. During the course of her employment, and as a result of her gender, the Plaintiff has suffered from numerous adverse employment actions as detailed above.

62. The University has discriminated against Plaintiff and similarly-situated female workers by treating her differently from and less preferably than similarly-situated male employees and by subjecting her to discriminatory (lesser) pay and benefits, discriminatory terms and conditions of employment, and other forms of discrimination, in violation of Title VII.

63. That the discriminatory misconduct described above was the result of a willful or intentional effort on the part of the University to discriminate against the Plaintiff for reason of her gender.

64. That as a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of gender, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to her professional reputation and emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

65. The University's unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## COUNT IV
### (Violation of Title VII - Retaliation)

66. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

67. Title VII makes it unlawful for an employer to discriminate against an employee because he or she has opposed any practice made an unlawful by Title VII, or if he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

68. In October of 2014, Ms. Agüero filed an informal complaint with the Office of Diversity Equity and Access ("ODEA") alleging sexual harassment from tenured staff employed by the College of Business.

69. On October 12, 2015, Ms. Agüero filed a second complaint with ODEA, alleging that she had been discriminated against based upon her gender, race, and national origin.

70. Plaintiff, in good faith, believed that the above-described less favorable terms and

conditions of employment that she was subjected to were illegal workplace discrimination and/or harassment.

71. As described above, Plaintiff's complaints to Defendant regarding the discriminatory conduct was protected activity under Title VII.

72. The Plaintiff was retaliated against by her employer as a result of her having disclosed the October 2014 incident of sexual harassment, as well as having filed the October 12, 2015 complaint with ODEA, as she was given several negative evaluations and ultimately was given a one-year termination contract for her position as the Assistant Director of the CPRBS on April 7, 2016.

73. There is a causal connection between the protected activity and the adverse employment action.

74. The University has subjected Plaintiff to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Plaintiff's complaints of discrimination and harassment, and terminated Plaintiff's employment because of her protected activity in violation of Title VII.

75. The University has treated similarly situated, non-complaining and/or non-charge filing employees more favorably than Plaintiff.

76. That as a direct and proximate result of one or more of the above acts of retaliation as described above, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT V
### (Violation of Illinois State Officials and Employees Ethics Act)

77. Plaintiff repeats and re-alleges all of the paragraphs in this complaint as if fully set forth herein.

78. The State Officials and Employees Ethics Act, 5 ILCS 430/15-10, prohibits retaliatory action by a State agency or employee against a State employee because he or she 1) disclosed or threatened to disclose to a supervisor or to a public body an activity, policy or practice of any State agency or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation; or 2) provides information to any public body conducting an investigation, hearing or inquiry into any violation of law, rule or regulation by any State agency or State employee.

79. Defendants, University of Illinois and the Board of Trustees of the University of Illinois, are State agencies within the meaning of 5 ILCS 430/15-10.

80. Pursuant to 5 ILCS 430/15-5 through 15-20, the actions against Plaintiff by the University were adverse employment actions in retaliation for Plaintiff's protected activity as described herein. Plaintiff reasonably believed the activities, policies and practices at the University violated the laws, rules and regulations. Plaintiff's protected activity was a contributing factor that caused such adverse actions to be taken against her.

81. Pursuant to 5 ILCS 430/15-25, Plaintiff is entitled to all remedies necessary to make her whole and prevent future violations of the Act, including, but not limited to: reinstatement to her previous position within the University, as well as reinstatement of full benefits and seniority rights, and reasonable attorneys' fees. In order to make her

whole, Plaintiff also seeks an award of compensatory damages for the severe emotional distress and humiliation she has had to incur.

82. To prevent future violations of the Act, Plaintiff seeks an award of punitive damages against the Defendants.

## COUNT VI
### (Violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*)

83. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

84. As set forth in the preceding paragraphs, Plaintiff engaged in activities for which government employees are protected from retaliation by the Whistleblower Act, including but not limited to disclosing the possible financial mismanagement of CPRBS funds that Plaintiff had reasonable cause to believe disclosed violations of Illinois law, rules, and regulations to government or law enforcement agencies.

85. By engaging in the adverse conduct described in the preceding paragraphs, including but not limited giving the Plaintiff several negative evaluations, marginalizing the Plaintiff and ultimately deciding to terminate Plaintiff's contract, Defendants engaged in a pattern of retaliation against Plaintiff in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*.

86. Said Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

87. Defendants' unlawful conduct was intentional and undertaken with malice and reckless

indifference to Plaintiff's rights under the Whistleblower Act, and Plaintiff therefore seeks awards of punitive damages against these defendants in order to deter them and others similarly situated individuals from such wrongful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Award damages to Plaintiff for loss of pay and benefits incurred as a result of the discrimination against her as alleged in this complaint, pursuant to and within the statutory limits under Title VII of the Civil Rights Act as well as incidental, consequential, and punitive damages;

B. Enter a declaratory judgment that Defendants have unlawfully retaliated against Plaintiff in violation of the State Officials and Employees Ethics Act, 5 ILCS 430/15-10, the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*.; and Title VII of the Civil Rights Act;

C. Order that the University reinstate Plaintiff to her position as an Assistant Director to the Center of Professional Responsibility in Business and Society;

D. Grant Plaintiff a judgment for compensatory damages as to each count in an amount sufficient to fully compensate her, and grant Plaintiff a judgment against the Defendants for punitive damages;

E. Permanently enjoin the University from retaliating against whistleblowers and those who complain of discrimination by appointing a court monitor to prevent such wrongdoing;

F. Assess against the University and in favor of the Plaintiff such liquidated and exemplary damages as may be provided by law for the willful violations of the law committed by it;

G. Award Plaintiff damages for pain and suffering;

H. Award Plaintiff pre-judgment interest for the defined sum of wages and benefits lost;

I. Grant Plaintiff reasonable attorneys' fees, costs, and fees for experts; and

J. Grant Plaintiff such other relief as this Court deems necessary and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

ALEJANDRA AGÜERO,
PLAINTIFF

By: /s/Ronald S. Langacker
Ronald S. Langacker
Attorney for Plaintiff

Ronald S. Langacker, #6239469
Attorney for Plaintiff
Langacker Law, Ltd.
102 East Main Street, Suite 100
Urbana, Illinois 61801
(217) 954-1025
(217) 903-5255
ron@langackerlaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| ALEJANDRA AGÜERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.: 2016-cv-2298 |
| | ) | |
| UNIVERSITY OF ILLINOIS, and | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| | ) | **JURY TRIAL** |
| Defendant(s). | ) | **DEMANDED** |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 30, 2017, he served copies of the **Amended Complaint at Law** upon the following by first-class mail, postage prepaid:

William J. Brinkmann, Kenneth D. Reifsteck & Philip J. Pence
Thomas, Mamer & Haughey, LL
30 E. Main, PO Box 560
Champaign, IL 61824-0560
wjbrinkm@tmh-law.com
kdr@tmh-law.com
Philip@tmh-law.com

On this same day, this **Amended Complaint at Law** and **Certificate of Service** by electronically filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the CM/ECF participant(s).

Respectfully Submitted,

By: s/ Ronald S. Langacker
Ronald S. Langacker, #6239469
Attorney for Plaintiff
Langacker Law, Ltd.
102 E. Main Street, Suite 100
Urbana, Illinois 61801
(217) 954-1025
(217) 903-5255
ron@langackerlaw.com